AUSA:   Danielle Asher                    Telephone:  (313) 226-9100
AO 91 (Rev. 11/11)   Criminal Complaint          Special Agent:   Mary E. Behler ATF          Telephone:  (330) 716-2666

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
   v.

Devin King

Case No.

Case: 2:22−mj−30377
Assigned To : Unassigned
Assign. Date : 9/6/2022
Description: CMP USA v. SEALED
MATTER (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___the year 2020 through September 2022___ in the county of _____Wayne_____ in the
_____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D) | Conspiracy to possess with intent to distribute and to distribute oxycodone, psilocyn/psilocybin, and marijuana; distribution of psilocyn/psilocybin; and distribution of oxycodone. |

This criminal complaint is based on these facts:
See attached Affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Mary E. Behler, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___September 6, 2022___

_____
*Judge's signature*

City and state:  Detroit, MI

Hon. Jonathan J.C. Grey, United States Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF AN CRIMINAL COMPLAINT</u>

I, Mary E. Behler, being first duly sworn, hereby state:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.  I have been employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, as a Special Agent since December of 2013.  I graduated from the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. During my employment with ATF, I have conducted and/or participated in numerous criminal investigations involving the illegal possession, use, and sale of firearms, drug trafficking violations, and criminal street gangs.

2.      I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

1

3.      I submit this affidavit in support of a criminal complaint charging that, at least as early as 2020 through on or about the date of this complaint, in the Eastern District of Michigan, the defendant, DEVIN KING (B/M; DOB: XX/XX/1999), knowingly conspired and agreed with persons known and unknown, to possess with the intent to distribute and to distribute a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance, a mixture or substance containing a detectable amount of psilocyn and/or psilocybin, a Schedule I controlled substance, and marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D).   Additionally, on or about July 20, 2022, in the Eastern District of Michigan, defendant DEVIN KING distributed a mixture or substance containing a detectable amount of psilocyn and/or psilocybin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).   Also, on or about July 29, 2022, in the Eastern District of Michigan, defendant DEVIN KING distributed a mixture or substance containing oxycodone a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

**PROBABLE CAUSE**

**KING'S INVOLVEMENT IN NARCOTICS TRAFFICKING**

4.     On September 30, 2021, I obtained a Federal Search Warrant for DEVIN KING's cellular device (18-50629-158).  I observed the following examples of KING's involvement in a narcotics-trafficking conspiracy on DEVIN KING's cellular device:

a.  On May 21, 2020, DEVIN KING sent a message to a conspirator, stating, "Can I get a zip [ounce] for the brother price?" Based on my training, experience, and knowledge about the investigation, I believe that KING is asking to receive narcotics at a discounted price. The conspirator responded, "If you want exotic [a type of marijuana strain] 300 [referencing price] …that all I got."

b.  On September 26, 2020, Devin KING sent a message to a conspirator, stating, "Sell the rest of the black bag for me Gang I'll be back in the morning…The weed in the cabinet where the snacks at…Aye bitch…Call me gang…Ready for another gang finishing up my lil bit na." The conspirator directed KING to 202XX Ilene and stated, "Bring 3 for her." KING stated, "Bet I'm finna go to the nino too." The conspirator responded, "Alr

make that sells [meaning sales] first." Based on my training, experience, and knowledge about the investigation, I believe that KING and this individual are conspiring to sell and distribute narcotics together.

c. Additionally, on November 20, 2020, DEVIN KING sent a message to a conspirator stating, "I got some percs [Percocet's] gang wanna buy them or you loaded?"  The  conspirator responded that he already has a lot.

d. On November 26, 2020, a conspirator sent a message in a group chat, stating, "I'm about leave out now ah yeah ik comming to the block pull them ps [Percocet] out for me." KING responded, "Okay bet you I'm [they in] the box." Based on my training, experience, and knowledge about the investigation, I believe that KING and the conspirator are involved in the possession, sale, and distribution of Percocet pills together.

5.     Additionally, on August 29, 2022, KING posted a photograph to his publicly available Instagram account depicting KING in possession of a suspected firearm and suspected marijuana. KING captioned the photograph, "Niggas starting beef with me tryna earn some stripes fuck around and lose they life 💜." Based on my training, experience, and knowledge about the

investigation, I believe that KING is in possession of a firearm while possessing narcotics.



6.     Throughout the course of the investigation, law enforcement identified the 193XX Archdale Street, Detroit, Michigan as a location where DEVIN KING and others distribute narcotics (hereinafter referred to as the "ARCHDALE LOCATION"). The following controlled purchases were conducted utilizing an undercover ATF Agent or a Confidential Informant at the premises between the dates July 20, 2022, and August 30, 2022.

**BUY #1**

7.      On July 20, 2022, ATF Special Agents and Task Force Officers

("TFOs") conducted an operational briefing prior to a controlled purchase

operation utilizing ATF Confidential Informant 28831[1] ("CI-28831"). Law

enforcement initiated surveillance around the ARCHDALE LOCATION.

Special Agent Gatza provided CI-28831 with audio/video recording devices to

capture the controlled purchase. I instructed CI-28831 to purchase marijuana

and Percocet pills for $200 in pre-recorded government funds from Devin

KING.  Special Agent Gatza provided CI-28831 with the pre-recorded Agent

Cashier Funds, for the controlled purchase prior to the operation and ATF

personnel conducted both mobile surveillance and audio electronic surveillance

of the undercover controlled purchase.

8.      At approximately 12:02 PM, CI-28831 arrived at the

ARCHDALE LOCATION, exited his/her vehicle, and walked in the front door

of the residence.

---

[1] CI-28831 has provided useful and reliable information in the past. CI-28831 has
assisted and conducted with approximately nine (9) controlled purchases of
narcotics during other federal investigations. During this investigation, payments
have been made to CI-28831 by law enforcement officials for services and
expenses incurred. At no time was the information provided by CI-28831
determined to be false or misleading.

a. CI-28831 informed the unknown black male inside the ARCHDALE LOCATION, he/she needed some weed and asked if he had some "percs" (referring to Percocet pills).

b. CI-28831 asked, "How many Percs can I get for a hundo [PH]?...What do you got?"

c. The unknown male asked CI-28831 what he/she is trying to get stating, "You trying to get some 10s?" CI-28831 stated he/she would get some 10s (referring to the milligrams)

d. The unknown male asked, "You say you wanted $100 in weed?" CI-28831 responded in the affirmative.

e. CI-28831 provided the unknown male the pre-recorded government funds in exchange for the narcotics. CI-28831 departed the ARCHDALE LOCATION.

9. At approximately 12:08 PM, CI-28831 met Special Agent Gatza and I at a pre-determined location. CI-28831 provided me with five (5) zip lock plastic baggies containing suspected marijuana and five (5) Percocet pills. Subsequent laboratory testing of the suspected Percocet pills identified the substance as Oxycodone, a Schedule II controlled substance.

**BUY #2**

10.     During the month of July 2022, an ATF undercover Agent ("U/C") communicated with KING utilizing the Target Cellular Device regarding the sale of suspected psilocybin mushrooms and suspected Percocet pills and then conducted a controlled purchase of suspected psilocybin mushrooms with KING at the ARCHDALE LOCATION in Detroit.

    a.  On July 19, 2022, a U/C Agent observed that KING's Instagram account posted a picture of psilocybin mushrooms for sale.  The U/C Agent contacted KING through Instagram and referenced purchasing ¼ of an ounce of the psilocybin mushrooms.  KING confirmed that he would sell an amount to the U/C Agent for $70 and advised the U/C Agent to contact him on Instagram the following day.

 

Screenshot #1                    Screenshot #2

11.     On July 20, 2022, ATF Special Agents and TFOs conducted an operational briefing prior to the undercover controlled purchase.  ATF provided the U/C Agent with the pre-recorded Agent Cashier Funds, for the controlled purchase prior to the operation and ATF personnel conducted both mobile surveillance and audio electronic surveillance of the undercover controlled purchase.

12.     At approximately 12:05 pm, the U/C Agent contacted KING via Instagram messenger and informed KING that he was getting close to Detroit. The U/C Agent asked KING for an address by texting, "Need some numbers to punch in bro."   KING responded at 12:17 pm, by messaging a phone number "XXXXXX1342."

13.     At approximately 12:20 pm, the U/C Agent called KING on the number that KING provided.  During the conversation, KING told the U/C Agent that he was near 7 Mile and Southfield, and he would send the U/C Agent an address.  KING then provided the address "19355 Archdale."

14.     At approximately 12:37 pm, the U/C Agent activated the audio/video recording devices.  The U/C Agent left the staging location and drove to the deal location.  The following observations/actions were made by U/C Agent during the transaction:

b. At approximately 12:42 pm, the U/C Agent parked in the driveway of 19355 Archdale Street, Detroit, MI.  The U/C Agent observed a newer Cadillac Escalade backed into the driveway and the U/C Agent parked in the driveway near the sidewalk.  Shortly after parking, KING exited a residence on the opposite side of the street (later identified as the ARCHDALE LOCATION). KING exited using the front, west facing door, and walked towards the U/C vehicle.  Once KING walked into the driveway, he walked past the U/C vehicle and briefly entered the Cadillac Escalade.  After a few moments, KING closed the door to the Cadillac Escalade and approached the U/C Agent on the passenger's side.  KING stated "Sup bro, I'm going to get it right now. It's across the street," and walked back to the east side of the street and entered the ARCHDALE LOCATION through the front door.

  i. At approximately 12:44 pm, KING left the ARCHDALE LOCATION through the front door and again crossed the road back to where the U/C Agent was parked.  KING walked up to the U/C vehicle at the front passenger door and handed the U/C Agent a clear plastic baggy

containing the psilocybin mushrooms and a digital scale through the open window.  The U/C Agent weighed the bag containing suspected psilocybin mushrooms while KING was standing outside the front passenger's door. The digital scale registered a weight of eight grams.  The U/C Agent then handed KING $70.00 in pre-recorded buy funds and gave KING the digital scale.

*(Below is a screenshot from BWC worn by the U/C)*



*(Below are two screenshots from video captured by undercover vehicle)*





b. At approximately 12:45 pm, KING then left the vehicle and returned to the ARCHDALE LOCATION and entered through the front door.

c. The U/C Agent then left the area and drove to a staging location. I took the clear baggy containing suspected psilocybin mushrooms into my custody. A subsequent laboratory report confirmed the mushrooms tested positive for 6.94 grams of psilocyn and/or psilocybin, a Schedule I controlled substance.

### BUY #3

15.     On July 29, 2022, ATF personnel conducted an operational briefing prior to a U/C controlled purchase.  ATF provided the U/C Agent with the pre-recorded Agent Cashier Funds, for the controlled purchase prior to the operation and ATF personnel conducted both mobile surveillance and audio electronic surveillance of the undercover controlled purchase.

16.     Prior to the meeting, the ATF U/C Agent engaged in cellphone communication with KING on the Target Cellular Device, for the purposes of arranging the undercover purchase of Percocet pills.  KING informed the U/C Agent he had "Percs 10-30," weed, and weed Kool-Aid. Shortly thereafter, KING called the U/C Agent from the Target Cellular Device. The U/C Agent informed KING he would buy five 15mg "Percs" for $25.00 each, for a total price of $125.00.

17.     At approximately 1:55 pm, the U/C Agent departed the staging location and drove toward the ARCHDALE LOCATION.  The following observations/actions were made by the U/C Agent during the transaction:

18.     At approximately 2:07 pm, the U/C Agent parked in the driveway of 19355 Archdale Street, Detroit, MI.  The U/C Agent called KING's number but did not get an answer.

19.    At approximately 2:13 pm, KING came from the residence on the opposite side of the street (the ARCHDALE LOCATION).

20.    KING approached the U/C vehicle on the passenger's side and spoke the U/C Agent through the open front passenger's window.  The U/C Agent asked KING if he had them (referring to the Percocet pills).

21.    KING stated that he was going over there to go get them. KING stated he was wanting the $125.00 in buy funds before going to get the pills.  When the U/C Agent was hesitant in fronting the buy money, KING threw his cellphone on the front passenger seat as collateral.  The U/C Agent then gave KING the buy money.  KING then walked over to the ARCHDALE LOCATION and entered through the front, west facing door.  KING's cellphone was a green colored Apple iPhone.

22.    At approximately 2:15 pm, KING exited the ARCHDALE LOCATION through the front door and crossed the road back to where the U/C Agent was parked.  KING walked up to the undercover vehicle at the front passenger door and handed the U/C Agent five white pills through the open window.  The white-colored, oval-shaped pills had an imprint of "R P" on one side and "15" on the other side.

(Below is a screenshot from video)



KING handing U/C five pills

i. At approximately 2:15 pm, KING then left the undercover vehicle.

ii. The U/C Agent left the area and drove to the ATF Office where the five pills were turned over to me. The laboratory results identified the substance as Oxycodone.

## BUY #4

23.    On August 16, 2022, ATF personnel conducted an operational briefing prior to a controlled purchase operation utilizing ATF CI-28831. ATF S/A Gatza conducted a search of CI-28831's person and vehicle and no contraband was found. ATF S/As and Task Force Officers initiated surveillance around the ARCHDALE LOCATION. S/A Gatza provided CI-28831 with audio/video recording devices to capture the controlled purchase. I instructed

the CI to purchase Percocet pills for $300 in pre-recorded government funds from Devin KING.  I showed CI-28831 a photograph of Devin KING. S/A Gatza provided CI-28831 with the pre-recorded Agent Cashier Funds, for the controlled purchase prior to the operation and ATF personnel conducted both mobile surveillance and audio electronic surveillance of the undercover controlled purchase. At approximately 12:21 PM the electronic recording devices were turned on.

24.    At approximately 12:22 PM, CI-28831 departed the staging location and proceeded toward the ARCHDALE LOCATION.

a.   At approximately 12:29 PM, CI-28831 arrived at the ARCHDALE LOCATION, exited his/her vehicle and walked in the front door of the residence.

b.   CI-28831 informed a male and other occupants at the residence he/she needs "300 of them perks." A male stated, "What you need, like what kind?"

c.   CI-28831 asked what he/she got from the male last time. The male responded, "10?"  CI-28831 asked the other "fellas" how they are doing.

d.   CI-28831 asked, "What you all doin' for a whole script?" A male responded, "We ain't got it like that."

e.   The male handed CI-28831 the suspected Percocet pills stating, "Here's 15 of em'." CI-28831 thanked the males and departed the residence.

f.   At approximately 12:32 PM, CI-28831 exited the ARCHDALE LOCATION, entered his/her vehicle and departed the area.

g.   At approximately 12:40 PM, CI-28831 met S/A Gatza and I at a pre-determined location. CI-28831 provided me with one (1) zip lock plastic baggie containing fifteen suspected Percocet pills. S/A Gatza conducted a search of CI-28831's person and vehicle and no contraband was found. This concluded the controlled purchase. The laboratory results identified the substance as Oxycodone.

25.   During a debrief, CI-28831 stated that there were numerous individuals inside the residence during the controlled purchase. CI-28831 stated DEVIN KING was present inside the residence and was seated directly in front of him/her while he/she was in the living room.

## **BUY #5**

26.   On August 30, 2022, at approximately 11:10 AM, ATF S/As Totten, Jacobs, and Campbell met CI-28831 at a pre-determined location. Upon arrival, S/A Campbell and Totten conducted a search of CI-28831's person and

vehicle with no contraband being found. ATF S/As initiated surveillance around the ARCHDALE LOCATION.

27.   S/A Totten provided CI-28831 with audio/video recording devices to capture the controlled purchase. S/A Totten instructed the CI to purchase Percocet pills for $270 in pre-recorded government funds from Devin KING.

a.  At approximately 11:17 AM, CI-28831 departed the staging location and proceeded toward the ARCHDALE LOCATION.

b.  At approximately 11:26 AM, CI-28831 arrived at the ARCHDALE LOCATION, exited his/her vehicle, and walked in the front door of the residence.

c.  CI-28831 informed a male, who referred to himself as "Quan," he/she was looking for percs.

d.  "Quan" stated, "You want 10's?"  CI-28831 stated he/she wants the ones he/she paid $20 per pill last time. "Quan" stated he was waiting for his man to pull up with them.

e.  CI-28831 asked what else he had. "Quan" responded, "20s, 15s." CI-28831 asked "Quan" to fill him up.

f.  CI-28831 asked for "Quan's" number, "Quan" replied that the spot is always open, and CI-28831 can just pull up whenever.  "Quan"

later provided his phone number to CI-28831 and stated he goes by

"Quan."

g. "Quan" then started packaging the narcotics and utilizing a

calculator on his cell phone.



h. "Quan" handed CI-28831 the suspected Percocet pills and CI-

28831 departed the ARCHDALE LOCATION.

i. At approximately 11:45 AM, CI-28831 met S/A Totten, S/A

Jacobs and S/A Campbell at a pre-determined location. CI-28831

provided S/A Totten with one (1) zip lock plastic baggie

containing nine suspected Percocet pills. S/A Campbell conducted

a search of CI-28831's person and vehicle. This concluded the

controlled purchase. The laboratory results are pending on the suspected Percocet pills.

28.     On September 2, 2022, I reviewed fixed surveillance footage of the ARCHDALE LOCATION. The following is a summary of my observations:

29.     On September 2, 2022, at approximately 4:57 PM, I observed DEVIN KING (wearing a black and white hat, blue jeans and a white t-shirt) standing in the front yard of the ARCHDALE LOCATION on a cellular device. A black male wearing a black t-shirt approached the ARCHDALE LOCATION and entered through the front door. Approximately one minute later, the black male exited the ARCHDALE LOCATION and walked away from the residence.   A black male with braids exited the ARCHDALE LOCATION and stood next to KING. Both KING and the unknown male were on their cellular devices (Image 1a). Based on my training, experience, and knowledge about the investigation, it is my belief the black male in the black t-shirt entered the ARCHDALE LOCATION to conduct a suspected narcotics sale.



Image 1a

30.    At approximately 4:59 PM, a black male wearing a blue t-shirt walked up to the residence and entered the ARCHDALE LOCATION. At approximately 5:00 PM, the black male with braids departed in a white sedan parked in the driveway and the black male in a blue t-shirt walked away from the ARCHDALE LOCATION (Image 1b). Based on my training, experience, and knowledge about the investigation, it is my belief the black male in the blue t-shirt entered the ARCHDALE LOCATION to conduct a suspected narcotics sale.



Image 1b

31.     At approximately 5:01 PM, a black male wearing a black shirt

and black Adidas pants (with stripes down the sides) entered the

ARCHDALE LOCATION. Shortly thereafter, KING exited the

ARCHDALE LOCATION. The black male wearing the Adidas pants then

exited the ARCHDALE LOCATION and stood next to KING. KING and

the unknown male appeared to look out toward the street (Image 1c). A

black male wearing a black t-shirt arrived at the ARCHDALE LOCATION

and entered through the front door.



Image 1c

32.     KING and the black male wearing the Adidas pants walked toward the street. At approximately 5:03 PM, the black male wearing the black t-shirt (who entered the ARCHDALE LOCATION at 5:01 PM) exited the ARCHDALE LOCATION and departed the area. KING walked back toward the ARCHDALE LOCATION and stood in the front yard. Based on my training, experience, and knowledge about the investigation, it is my belief the black male in the black t-shirt entered the ARCHDALE LOCATION to conduct a suspected narcotics sale.

33.     At approximately 5:04 PM, KING pulled a suspected firearm out of his waistband with his right hand and brandished it directly in front of the ARCHDALE LOCATION (Image 2a, Image 2b, Image 2c). KING held a black cellphone in his left hand. KING returned the suspected firearm to

23

his waistband and a black male wearing a white t-shirt and black shorts entered the ARCHDALE LOCATION.



Image 2a



Image 2b (Zoomed In)



Image 2c

34.     The black male wearing the white t-shirt exited the ARCHDALE LOCATION and stood on the porch, appearing to talk to KING.  At approximately 5:06 PM, KING and the black male wearing the white t-shirt entered the ARCHDALE LOCATION. Based on my training, experience, and knowledge about the investigation, it is my belief the black male in the white t-shirt entered the ARCHDALE LOCATION to conduct a suspected narcotics sale.

35.     At approximately 5:07 PM, a white mid-size Chevrolet SUV arrived at the ARCHDALE LOCATION and dropped a black male wearing a white shirt and black pants off at the curb. The white SUV then backed into

the ARCHDALE LOCATION driveway.   The black male entered the ARCHDALE LOCATION (Image 3a).



Image 3a

36.     At approximately 5:08 PM, the black male wearing the white t-shirt exited the ARCHDALE LOCATION with KING and the abovementioned black male wearing a white t-shirt and black shorts. The black male with the white shirt and black pants entered the white SUV and departed. KING entered the ARCHDALE LOCATION. Based on my training, experience, and knowledge about the investigation, it is my belief the black male in the white SUV entered the ARCHDALE LOCATION to conduct a suspected narcotics sale.

37.     I reviewed the fixed surveillance footage associated to the ARCHDALE LOCATION and observed numerous short stays, a high level

of foot traffic and cars arriving and departing with a short duration. In addition, I observed KING and suspected associates frequently walking in and out of the ARCHDALE LOCATION and standing in the front yard on their cellular devices. The below image was from approximately 5:23 PM when I observed numerous suspected customers at the ARCHDALE LOCATION (Image 4a). Based on my training, experience, and knowledge about the investigation, it is my belief the individuals entered the ARCHDALE LOCATION to conduct suspected narcotics sales.



Image 4a

38.     At approximately 5:40 PM, I observed KING depart the ARCHDALE LOCATION and enter the front passenger seat of a gold Chevrolet sedan. KING entered the vehicle with a black male wearing a gold hat, white tank top, and gold shorts (driver of vehicle) (Image 5a).



Image 5a

39.     Based on my training, experience and knowledge about the investigation, I believe that narcotics trafficking was occurring at the ARCHDALE LOCATION on September 2, 2022.  I believe this because the frequent travel patterns with short stays, excessive foot traffic to and from a house, and loitering around a house are common signs of drug activity at or near a residence.  This belief is also based, in part, on the previous controlled narcotics purchases occurring at or near the ARCHDALE LOCATION, and a conspirator's statement that the ARCHDALE LOCATION is always open.

40.     On September 2, 2022, at approximately 5:57 PM, I observed KING, wearing a black and white hat, blue jeans, and a white t-shirt, post a "live" story to his Instagram page, "bigg.two." During the live video, KING is driving with the abovementioned black male wearing the gold hat and

KING is in possession of two suspected firearms. Specifically, KING is in possession of a suspected black pistol, with an extended magazine, located in his waistband, and a suspected AK-style pistol. During the video KING states, "Purple Heart Vet."

 

Image 6a          Image 6b



Image 6c

## **CONCLUSION**

41.     Based upon the aforementioned facts stated herein, there is probable

cause to believe that the defendant, DEVIN KING (DOB: XX/XX/1999),

beginning at least as early as 2020 and continuing through the date of this

complaint, knowingly conspired and agreed with persons known and unknown, to

possess with the intent to distribute and to distribute a mixture or substance

containing a detectable amount of oxycodone, a Schedule II controlled substance, a

mixture or substance containing a detectable amount of psilocyn and/or psilocybin,

a Schedule I controlled substance, and marijuana, a Schedule I controlled

substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1),

841(b)(1)(C), and 841(b)(1)(D); and on or about July 20, 2022, in the Eastern District of Michigan, knowingly and intentionally distributed psilocyn and/or psilocybin, a Schedule I controlled substance, in violation of  Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and on or about July 29, 2022, in the Eastern District of Michigan, knowingly and intentionally distributed oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Respectfully submitted,

Mary E. Bohler, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable Jonathan J.C. Grey
United States Magistrate Judge

Dated:  September 6, 2022